Our next case is case number 4170015, Illinois Municipal League Risk Association v. City of Collinsville. For the appellant we have Mr. G. Coletto. No I want to say it correctly, so tell me, Giacoletto, alright thank you. And for the appellee we have Mr. Orpet, is that the correct pronunciation? You may proceed, counsel, thank you. Good morning. May it please the court, counsel. I'm Steve Giacoletto for the appellate, appellant rather, City of Collinsville. There's four elements for there to be coverage from the association to the City of Collinsville. First one being involving tangible property, the next being the loss of use, and then third and fourth one that go hand in hand is occurrence and accident. I first want to talk about tangible property. That in my opinion is the crux of this case and more specifically whether money, cash money checks, what have you in this case in these circumstances, whether that fits the definition of tangible property under this indemnification agreement. And although at first it may appear that I'm trying to expand the definition of tangible property, I'm not so much because really in Illinois we don't have a case, anywhere in the country at least that I could find, where it really discusses in these circumstances is money tangible property. So I know Judge Posner in the Oakley case which has been briefed and we'll talk about one of the things he commented on that the correct interpretation of tangible property depended on the legal consequences of it. So to me that legal consequences are always going to be different in every case and I think this is exactly correct where it's really going to be a case by case analysis as to whether money should be tangible property. And this is a unique case, the underlying case I should say is very unique. It's a class action case involving vehicle impoundment fees imposed by municipalities. There's no appellate final court decisions on that in Illinois and there certainly isn't anything in the country that's pretty a unique type of case and accordingly that lends its uniqueness to this case before the court. But still I'm not asking for a broad sweeping new definition of tangible property. The one I'm talking about would just be a limited set of circumstances and the circumstances would be that there's no physical destruction of the property and that's important because in the property damage definition in this policy there's two prongs. The first prong requires there to be physical destruction of the property. I want to set that aside for right now, that first prong. The second prong of it is with the loss of tangible property there is no physical destruction of the property and that's one of the circumstances I'm talking about. No physical destruction of the property. The second circumstance I'm talking about would be that we're talking about money, paper, checks, something people can exchange hand to hand. I'm not talking about electronic funds here or some other, I don't have a lot of analogies but I am talking about things that people can feel or exchange back and forth, receipts and sorts of that type of thing as being money. And then the last circumstance I think there needs to be an actual transaction between people. I know there's some cases in here involving theft and I'm not talking about trying to get coverage money as a tangible property for theft situations. I do concede some of the cases I've cited did involve theft but as I said there's no case that I know of that's on four squares with it including my own but I do think they are very persuasive when they talk about money as the intangible property that even though they do involve theft they are persuasive and I do think they help the court that we're not trying to break new ground here. So I do think money, I am asking that money be considered in those limited circumstances tangible property. That would cover our first element here, coverage from the association. Moving to loss of use, this has been a bit of a red herring issue or a rabbit hole issue whichever analogy you prefer. One that I'm guilty of chasing down myself in this brief. The loss of use debate in a lot of the cases that discuss loss of use are all involving this first prong of the property damage definition. That definition where it has destruction of property and can you have loss of use? Is it required to have a loss of use with destruction of property? And that really goes out the window with what I'm talking about here today. Because the loss of use that I'm talking about is from the second prong and there is no destruction of property. So I think it's obvious that we have a loss of use in this case. The underlying plaintiffs paid money to the city, they don't have the use of that money anymore. It hasn't been destroyed. It hasn't been burned up. It's not like a car or furniture that's been totally destroyed, permanently lost. It's a temporary loss and that's what the courts talk about it being a temporary loss. So that money has not been destroyed. There is at least some sort of representation that can be given back to them on it. So they've lost the use of that money for these several years, of course, while these cases have been proceeding through the circuit court and the underlying cases. So I think all the extensive analysis on loss of use doesn't apply because the money has not been destroyed. There is no permanent deprivation to the plaintiffs. The plaintiff did bring up a couple of cases on those loss of use issues. It was the Simmons and Advanced Network case. Those cases involved loss of use again under, I think, what would be the first prong, where they involved thefts. They involved thefts where the insurance company was not going to give coverage when your employee or your officer steals from another person or steals from your own company, unless this is under a general liability policy. I realize there may be some theft policies. But those cases are totally distinguishable from what we talk about here, loss of use, because they involved thefts by employees that were trying to be covered. There's also one, the Collin case, brought up on the loss of use by the plaintiff. And that case was distinguished because it involved a permanent loss of the property. I think it was furniture in that case, and they gave a nice analogy about a car. And you can't have a permanent loss of use of a car and a rental value of the car. But either, in the end, Simmons, Advanced Network, and Collin don't apply here because they all involve totally different circumstances of what I'm proposing for the definition of tangible property and its loss of use. The third and fourth elements for the city to gain duty to defend and indemnification is the occurrence and accident. They kind of go hand in hand. Occurrence is the third, accident being the fourth. Occurrence under the policy is defined on, is there an accident? But there is no definition of accident. But the Supreme Court, U.S. Supreme Court, is in my brief, gives the definition of what an accident is. And basically, so long as the city did not expect or intentionally caused harm to the underlying plaintiffs, then there is no accident in this case. Or there is an accident in this case, excuse me. It basically makes intent, intent to do harm and to do something wrong as being the element that would make it not an accident. So there is no evidence whatsoever in the underlying complaint that the city intentionally harmed it. Yes, they intentionally passed an ordinance, but to say that they wrongfully, intended to wrongfully deprive money or illegally deprive money as it's being alleged, that there is actually an intent there, that's not part of the case underlying it whatsoever. So I think with that, we do have an accident, thus we have an occurrence. So if we, it goes back to the crux, you know, what is tangible property? Is money in these limited circumstances? Exchanging hands, having paperwork involved, where there is no destruction of property. Is money in that limited circumstance tangible property under this definition? I think it is. Loss of use, occurrence, I think an accident all rolled in right after that. And I think once you can come across that hurdle with the tangible property being, including money, I think you can find that the circuit court respectfully erred in its decision. And I ask that it be reversed and remanded and that with the direction that the city have been given a indemnification and defended by the association. Thank you, counsel. You'll have time on rebuttal if you so desire. Mr. Orpet. Good morning. May it please the court, Mitch Lortma for the Illinois Municipal Risk Management Association, which I'll refer to as the IMLRMA. Hearing counsel's argument this morning and reading the briefs has caused me to want to take a step or two back on a couple of points. To frame this, I think, in what I hope is a helpful manner. First is what is the IMLRMA? There's a lot of discussion about contracts of adhesion and kind of classic insurance company sorts of rhetoric in the brief and argument. And we pointed in our brief to the City of South El Monte case, which is a California case that has, I think, a very interesting and helpful discussion about risk pools, self-insured risk pools, which is what IMLRMA is. And we would also direct the court's attention, as we did as an Exhibit A to our declaratory judgment complaint, to the intergovernmental cooperation agreement between Collinsville, other municipalities, which led to the creation of the IMLRMA and sets forth precisely what it is, which is the opposite of a commercial insurance company, which is perceived as some sort of contract of adhesion wielding a club that you have to take it or leave it. To the contrary, as pointed out in the intergovernmental cooperation agreement, this is a cooperative program of risk management. The losses are borne by all the municipalities and they dictate through an agency, the IMLRMA, that they create a procedure and language and agreement to determine what of their individual pooled risks, individual risks that are then pooled, will be covered and what will not. These are choices made by the municipalities themselves, members like the City of Collinsville, about how they're going to handle their pooled risks. It is the opposite, we submit, of a contract of adhesion. And we think that should be kept in mind here. Not because this case depends on contract referendum or anything like that, but just in terms of the tone it is set, it should be remembered that this is a self-defined agreement by Collinsville and the other members of the IML. So if we have another community that's part of the risk pool, would their policy be the same? Yes, sir. So there's no bargaining for or asking for additional coverage or a different type of coverage? Or if that was asked for, would it have to be agreed to by everybody? Well, there's a process set out in the bylaws. These are yearly forms. They have been modified over the years. There's several forms you have a year at the bottom of the pages that show when that particular form was put into effect for the first time. So the terms do change. And there's a letter that goes out on a yearly basis to the members that talks about what the changes are. And if a member doesn't like this, if a member wants coverage for this kind of risk presented in this underlying case and wants coverage for it, it can set about, as in other democratic institutions, to try and work those changes through the terms. Which gets me to the second preliminary point I wanted to make about just what is the form. Council Collinsville, in its brief, I think, and in the court below, argued RMA-1, the GL, general liability portion of this, starts out with we cover everything. Well, no, it doesn't. That's what stuck in my craw. It doesn't cover everything. If you want to make that kind of, I think, admittedly overly broad comment, because not everything is ever covered. But in terms of a broad picture, it's the entire RMA coverage grants that present the picture. This is a package policy where RMA-1 covers GL, RMA-4 covers public officials' wrongful acts, and it goes through RMA-15. Things that are included in RMA-1 are excluded elsewhere. Things that are included in RMA-4 are excluded elsewhere. So you have these different risks being covered by different portions of the RMA coverage grants, with those risks being covered in that one section and excluded in other sections. Why is this important? Because the underlying risk is a classic, and keep in mind the general framework, the general interpretation, that you look to the underlying complaint, you look to the terms of the coverage agreement. So here the underlying complaint is alleging an ordinance passed by Collinsville that deprived a class of plaintiffs, putative class of plaintiffs, of their constitutional rights. There's a one-count substantive due process rights. That's what's alleged here. There is RMA-4, public officials' wrongful acts. Wrongful acts are defined. RMA-4 coverage is not determined by an occurrence, does not require an occurrence. It simply requires a wrongful act, and it includes in the coverage grants things like passing legislation that deprives someone of a constitutional right or other actions that deprive someone of constitutional rights. If we were arguing RMA-4, the burden would then be on us to show that the exclusions apply, which they do in this particular case. And that's why we're not arguing RMA-4 and why Collinsville has never argued RMA-4. Instead, because this case is clearly excluded by the wrongful acts coverage of the coverage grants, Collinsville is trying to shoehorn this instead into RMA-1 by making the arguments they just did, namely that this is tangible property, which it isn't. Number two, that it is not a loss, that it is, sorry, a loss of use, which it isn't. And number three, or three and four, depending on how you term it, that it is an accidental situation or an occurrence, which it isn't. So I wanted to offer that as a backdrop to this argument, and I'll go into those three elements or four elements. But I wanted to remind the court that it is Collinsville, that it is, that there is clearly a place where this type of act, if not specifically excluded, would have been covered. And this is the type of conduct, this deprivation of someone's constitutional rights and that kind of claim, there is a place in this coverage agreement where that type of claim is typically covered and the municipalities have decided to exclude some of those claims. And we recite those in our brief. And again, Collinsville has never argued that those exclusions don't apply or shouldn't apply, and instead are trying to shoehorn this case into a totally different kind of coverage. So let me try to address the arguments specifically made here. As I said, we start with the Kopesky or Schmidt underlying complaints. One counts substantive due process. And what is the damage alleged? That complaint, both complaints, stated that the plaintiffs have been deprived, keyword deprived, of life, liberty, or property without due process. That's the damage. That is not, that deprivation of constitutional rights is not a property, it's not tangible property. And only a part of what they seek in compensation, not as alleged damage, but what they're seeking in compensation for that deprivation of constitutional rights, is the value back of the money that they paid in. And we have no evidence, and it's Collinsville's burden to show, to show that they're within coverage grants. There's no evidence of how any particular underlying payment was made. Well, I wanted to ask that. I wondered if they would have any record of that. I mean, some people could have paid cash. Some people could have used a debit card. Some people could have paid with an app on their phone. I mean, we have nothing on that. There's nothing in the record on that. There's nothing in the trial court on that point. I mean, that's significant, right? I mean, in terms of whether or not it's defined as tangible? We don't think it is, because we don't think any of it is. But, yes, it certainly is. I mean, that's something that goes in the consideration of whether or not you consider it tangible, though, right? It's certainly part of the dialogue in the other courts and all the cases that have been cited to you. We believe, as cited by several court decisions, that even hard cash, if I were to take money out of my pocket and put it here and exchange it with Mr. Giacoletto, that even that would not be the destruction of property. We think the cases, and it's a bit of a philosophical mind-bender, but we think that the dialogue or the writings of Judge Posner, for one, the Mack case in Georgia is another, the advanced case out of California, really have it right that the piece of rag paper is representative of a concept. And today's technology of Bitcoin, blockchain technology and all is even further proof, because the Mack case in Georgia talks about how the money I pull out of my pocket has far less value as a thing than what it represents. And it only represents something of value because we repose faith in the government and society to have our systems of finance. Now all of a sudden we're seeing how conceptual that is, how intangible that is, because people are switching to Bitcoin and blockchain technology, and it doesn't even exist with respect to the government anymore. So we're seeing wild value fluctuations in value. But it's the same thing. What is in my pocket, sorry to wave money around in a courtroom, but what I have in my pocket, this dollar bill is worth nothing except until somebody recognizes its value. But the piece of paper, the rag paper it is printed on, it's not worth a dollar. So the distinction that the courts draw, Judge Posner did, the Mack case did, and one of the other cases, talked about the difference between value and use. So what is tangible property when it comes to money is the first dollar I made as a lawyer that I have hanging up in my office. Someone else pointed out that the grandfather's money received is a 49er in California. Or Judge Posner talked about the $20 bill that has Michael Jackson's picture on it instead of Andrew Jackson's picture, and therefore it's a piece of art. That has value. That's a thing. That's tangible. The $20 bill is representative of an entire financial concept that we deal with, that we believe in. It's valuable, it has value, but it is not tangible property. So we disagree in any way that what was done here, even assuming evidence of cash payments, which isn't there and is there for it to show, that even if it were there we would still argue that Kopecky-Schmidt are not asking for the return of whatever it is they paid with. If they paid with a $20, a $50 bill, they're not getting that $50 bill back. And as Judge Posner posits in his opinion, if they got $500 in 20s back instead of the $500s that they paid with, they're not complaining. If they get a check back, they're not complaining. They're not getting the tangible property back, and they're not even asking for it. And value is intangible. So that's basically the story on the tangible property. On the question of loss of use, we disagree completely. And I would point out that most of the brief that Toland's bill offered was a discussion on, really, what we had conceived as in the policy, in the coverage grants, which is that there is a definition that allows property damage to be loss of use without physical damage. That's different than some of the early cases before the change was made, both in the coverage grants and in the general liability ISO forms in which a lot of this is based. But here, loss of use, Toland's bill is not being consistent. They want to say, on the one hand, that the $500 paid by the class plaintiffs was somehow tangible property. But they're not getting that back, and they're not asking for it back. So if that's tangible property, and we don't think it is, but if it is, then the fact that they're not getting it back and they're not asking for it back means it's gone. It's a permanent deprivation. So it's gone permanently, correct. So we don't think it's tangible property, but if it is, then it's got to be permanently gone, because nobody's asking for it back, nobody's getting it back, nobody's even claiming. They're trying to get it back. That is a permanent deprivation, and it is therefore not loss of use. And we've cited a number of cases on that in the briefs as well. We don't think that's a red herring at all. We think that is an important second element. And all these elements, I want to point out again, are alternatives. Collinsville has to satisfy, as I think Mr. Chuck will have acknowledged in his opening, they have to satisfy all of these in order for this Court to reverse Judge Schmitt's ruling. And we think that they fail on all accounts, that it is not tangible property, that there is no loss of use because it was permanent deprivation. And finally, on the question of occurrence, admittedly the Court decisions are a little askew and kind of all over the map on this. I think that perhaps the flaw in Collinsville's argument on the passage of an ordinance when a municipality is presumed to know the law, to call that an occurrence, the flaw in that argument is this. I've been dealing with this case for a couple of years. We've argued it in the trial court. We've had briefing in this court. I've heard oral argument. Maybe it will come out and reply. I still don't know what they think the occurrence is. Is it the passage of the ordinance? Is it something that happened in the impounding of the cars? Is it something, is it receiving a payment? Is that the occurrence? We know the occurrence is something done by Collinsville if there's an occurrence. So it's not the payment by somebody else. That's their act. So is it the receipt of payment? Is it the passage of the legislation? If it's the passage of the legislation, which is what the briefing seems to suggest, that happened in 2008 when the ordinance was passed, not during this policy term. So that doesn't fit within this policy in any event. But also, a point we argued extensively before Judge Schmitt, was there's no evidence here of intent. Intent, the absence of intent to create a constitutional deprivation intentionally, does not mean that what was done in passing an ordinance is enhancing. Rather, the principle that we adhere to and argue is that the natural consequences of an act are not an accident. So in Illinois, we have the Viking case, for example, where a building fell down, for gosh sakes. And it was because there was no bracing put into it. And the court ruled it wasn't an accident because it was a natural consequence of failing to put in bracing. And when you decided not to put in bracing, it's a natural consequence of what would happen without the proper bracing there. Here we have a municipality presumed to know the law and understand it, the legal consequences of its actions, which has passed an ordinance that set forth when XYZ happens, we have impounded your car under the following circumstances. When those things happen, you have to pay $500 to get your car back. The intent clearly was under these circumstances, members of the public such as the putative class plaintiffs in the case below have to turn over $500 in order to get their car. They did that. They got the car. The natural consequence of passing legislation saying you have to pay $500 to get your car back is people paying $500 to get their car back when those circumstances arise, which they were expected to, hence passing legislation, and they did, hence the payment of $500 by these plaintiffs in the lawsuit. So to argue that we didn't intentionally set out to deprive you of your constitutional rights is irrelevant because Collinsville is presumed to know the law, and the fact that it may be argued whether it's a deprivation or not does not mean that they're not presumed to know the law. They are. And the consequences of passing the legislation designed to collect the money in these circumstances is what took place here, and therefore is not an accident. Again, to the extent that it is an accident, it was an accident. It happened in 2008 when they passed the legislation. Well, they wouldn't be contending with passage. They'd be contending with continued enforcement, wouldn't they, as being the occurrence? Well, that would, I assume, mean – I don't know what they're contending. As I said, we haven't heard that. Then they would essentially be arguing that every single situation in which – and I'm struggling with the word enforcement in that particular case. When does the enforcement – Or the ongoing implementation. But if it's every time they collect $500, is the receipt of money a wrongful act? I suppose they could make that argument, and that would place it within the policy period for that purpose. But I don't think that's still the argument I've made about an accident. It's not accidental. It's precisely what was contemplated by the legislation. It was indeed the intent of the legislation. And they got what they were asking for, which is $500 from all these people every time the cars were impounded, which is what they set out to do. So for that reason, for those reasons, we are confident that this is not as contemplated on the general liability policy, an accident. And again, I'll point out, RMA-IV provides coverage for wrongful acts, which is a defined term that has nothing to do with occurrences. So it doesn't have to be an accident to be a wrongful act. And if it had not been excluded under the various exclusions that we cite, and if Collinsville, as I said, has chosen not to argue this point, but if they were not excluded, there would be coverage as a wrongful act. Passage of legislation is a wrongful act. That's not what we're dealing with here. It's not an accident. It's not an occurrence. You're out of time, counsel. Thank you very much. Thank you. Any rebuttals, Mr. Taccoletto? Yes, thank you. When I hear counsel, and I've heard this discussion before, argument before about the association, making the distinction between indemnification and the risk pool, et cetera, et cetera, I always wondered what relevance it had. And now I speculate here with my following words on where it perhaps does come into play. It suggested that, okay, to me it is just like a private policy. Here's the terms. Pay the premiums. If you don't like it, find another insurance company. The only difference in this one, I guess theoretically the members could get together and at the end of the year petition or whatever they do and get the policy changed, whereas in a private individual you can't do that. But to me it's all the same. At the end of the year you get here's your policy changed and we all throw it in the drawer and nobody does anything about it. I still think either way the insurance loss concept still applies in indemnification agreement or not. But I think that maybe the point of why he stresses that is that the definitions here, because it is perhaps not a contract of adhesion or whatever, but I think there's some blame on the cities that, hey, if you don't like the terms, get them changed. But I think the problem with it is, and I speculate here though is why that's argued that way is because the definitions really don't fit. And so the association can say, well, hey, you can change the definitions. We don't make them up. For example, I work backwards here. If we don't like the definition of occurrence being accident, then why doesn't the association just put in what it wants to be defined as an accident? No, we have the state or the Illinois or U.S. Supreme Court defining what is accident for us. If they don't want to play by that accident rule, then they should put in what they want the definition of accident to be. But they is you. Well, in theory I guess. I guess that's part of it is. I think that does distinguish it. And who to know that? I don't know if members actually know that they could. I really don't know. Can you actually do that? I learned that today. So that's a new one on me. But anyway, go back to accident here. The city intentionally puts trucks on the street. It does not intentionally then have them rear end people. But if that happens, we intentionally pass the legislation, but that doesn't mean we are out there intentionally trying to do something illegal, trying to cause harm. But what unintentional act happened? There was no unintentional act that happened. Well, and then maybe we shouldn't use the word unintentional because that's not the definition. It's unforeseeable. The unforeseeable act is that parties would be harmed. Parties would be allegedly legally harmed. It's unforeseeable about passing an ordinance that says that if you want to get your car back, you can pay us $500. What is there unintentional about that? I agree. The passing of that ordinance is absolutely an intentional act. That it's harm, that it's illegally, that's not foreseeable. There's nothing foreseeable about that, that it's causing somebody. It's not so much the payment of the $500 that's the harm, it's that it's an illegal payment or an excessive payment. That's the allegation. That's a subtle distinction. But I don't doubt at all that the city intended to pass the ordinance. Of course they did, but they did not do that willingly, knowingly that it was an illegal act. It was not foreseeable that it was an illegal act, but foreseeably that it was excessive. And that's where the definition, which is the definition of accident. It's not about, and we go back to the other definition, too, is we talked about those exact same dollars, whether they're made up that would be returned, whether they're made out of the $500, whether it was a check back to them, or whether they paid in 50s or $100 bills, or whether they used their debit card. It's not about serial numbers on the exact same dollar bills and getting back those exact same serial numbers. It's not about that. That's not the definition. That's all of our definitions, but that's not the definition here that fits in the property damage definition in the policy. Because what the property definition in the policy, and maybe this is where we're hung up on why it's with the association being a pool, that tangible property has not been physically altered or destroyed. And so it fits that definition. Now, it's not our common sense that I'm supposed to get the same $100 bills back for my $500. No, but it's not been physically altered and destroyed. So it fits that definition. If that's not the definition they want, then it should be changed. The complaint does reference exchange of $500 and receipts, so I think there's enough in there, Gleen, that there is actually a paper exchange going back and forth. The RM4 endorsement has to do with, my interpretation has to do with, officers and employees of the city when they're involved in lawsuits or they're suing the city or that type of thing. So I don't think that fits at all in the underlying case. No individual party is being sued in the underlying case, so RMA4 does not fit. Curious thing, the definition of member, though, includes the corporate entity of Collinsville, and that definition is pretty large, so when you read it, it kind of fools you because member is also an officer and I believe also an employee of the city, so it kind of jumbles them together. I think I covered everything I had to. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess.